IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA G. CHOINIERE,

    Plaintiff,

vs.                                                          Civ. No. 00-328 JP/RLP

PRESBYTERIAN HEALTHCARE SERVICES,
INC., a New Mexico corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On December 15, 2000, the Plaintiff filed a Motion in Limine to Exclude the Testimony of Expert Witness Janet Toney (Doc. No. 41). Having reviewed the briefs and the relevant law,[1] I find that this motion in limine should be denied.

A. Background

The Plaintiff is suing the Defendant, her employer, based on the Family Medical Leave Act. While on approved maternity leave the Defendant eliminated the Plaintiff's position as the sales and marketing director of Secure Horizons. The Plaintiff alleges that the Defendant did not actually eliminate her position but rather redistributed her duties to several other employees. Plaintiff further alleges that the Defendant refused to hire her for other available positions for which she was qualified. The Defendant raises the affirmative defense that the Plaintiff failed to reasonably mitigate her damages for lost wages, benefits, and commissions.

---

[1] The Plaintiff requested a *Daubert* hearing to decide this motion in limine. I find that a *Daubert* hearing is unnecessary and will decide the motion on the briefs. *See Goebel v. Denver and Rio Grande Western R. R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000)(citations omitted)(trial court has discretion whether to conduct a *Daubert* hearing).

The Defendant intends to present Janet Toney as an expert witness on the employability of the Plaintiff. Ms. Toney is expected to testify that

> based on the hundreds of jobs available throughout the nation, and the significant number of jobs available in Albuquerque, Ms. Choiniere could have expected to be re-employed in a directly related field within 30 to 60 days, at a comparable wage. Ms. Choiniere's job search efforts were minimal and did not meet the New Mexico Department of Labor standards. Her repeated statements in her job search of the personnel recruiters and web site job listings, including the *Wall Street Journal* as having "none relevant" for her consideration is inconsistent with the research I completed over a parallel period of time.

Exhibit A at 6 (attached to Plaintiff's Memorandum in Support of her Motion in Limine to Exclude the Testimony of Expert Witness Janet Toney (Doc. No. 42) (Plaintiff's Supporting Memorandum), filed Dec.15, 2000). The Plaintiff contends that Ms. Toney's opinion does not meet the expert testimony standard set forth in Fed. R. Evid. 702, as amended December 1, 2000, or in the related case law.

B. Discussion

Rule 702 reads as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 was amended to reflect the holdings in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999). Advisory Committee Notes to Fed. R. Evid. 702, 2000 Amendment. In *Daubert*, the Court stated that to determine the reliability of principles and methods, the trial court may consider: (1) whether a "theory or technique ... can be (and has been) tested;" (2) whether it "has been subjected to peer

review and publication;" (3) whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation;" and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.  *Daubert*, 509 U.S. at 593-94.  These *Daubert* factors, however, may not be reasonable measures of reliability in all cases.  "Thus, whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad discretion to determine."  *Kumho*, 526 U.S. at 153.

The Plaintiff argues that Ms. Toney's proposed expert testimony is not admissible under Rule 702 for the following reasons:

-- First, Ms. Toney's "employability analysis" is not a recognized scientific procedure or method;

-- Second, Ms. Toney was not familiar with the author of an article she relied on to formulate her opinion;

-- Third, Ms. Toney did not know how the United States Department of Labor developed the statistics used in its market studies;

-- Fourth, Ms. Toney relied only on her experience and personal knowledge to conclude that a person with the Plaintiff's education, training and background who makes three weekly employment contacts will be re-employed within 30 to 60 days;

-- Fifth, Ms. Toney did not know where she obtained the statistic that job placement for a person with a disability is 60 to 90 days;

-- Sixth, Ms. Toney admitted that she had not seen the Plaintiff's job description prior to her deposition;

    -- Seventh, Ms. Toney did not speak with any of the employers the Plaintiff contacted about possible job positions to discern the actual competition for those positions;

    -- Eighth, Ms. Toney's professional experience is primarily in the field of vocational rehabilitation counseling for persons with disabilities;

    -- Ninth, Ms. Toney has not written any published articles regarding re-employment following termination of employment;

    -- Tenth, Ms. Toney does not know the error rate for the analysis she conducted in this case;

    -- Eleventh, Ms. Toney's analysis is not based on a clear understanding of the Plaintiff's training, background, and experience because the Plaintiff is not qualified for some of the positions Ms. Toney listed as available jobs the Plaintiff could apply for;

    -- Twelfth, Ms. Toney admits that her method of analysis cannot be tested; and

    -- Thirteenth, Ms. Toney's method of analysis is not used by any of her peers in the vocational rehabilitation field.

    1.  Whether Ms. Toney's "employability analysis" is a recognized method of analysis.

Vocational experts utilize the same type of methodology used by Ms. Toney in this case when they testify or present opinions before the Social Security Administration.  Affidavit of Janet Toney, Exhibit 1 at ¶5 (attached to PHS' Memorandum Brief in Response to Plaintiff's Motion in Limine (Doc. No. 49)(Defendant's Response), filed Jan. 8, 2000).  This methodology is also presented in at least two published guides on vocational rehabilitation as well as in other publications used in the vocational rehabilitation field.  *Id.* at ¶¶6 and 8.  Moreover, Ms. Toney has "seen this same methodology used by other vocational experts, and attended courses and

seminars where this type of methodology was discussed." *Id*. at ¶7. Based on this uncontradicted evidence, I find that Ms. Toney's "employability analysis" is a recognized methodology in the field of vocational rehabilitation.

> 2. Ms. Toney's familiarity with the author of an article she relied on to formulate her opinion.

Ms. Toney relied on an article titled "Older Workers Attractive to Companies" by James E. Challenger in formulating her opinion in this case. The Plaintiff notes that Ms. Toney does not know Mr. Challenger. Exhibit 2 at 6 (attached to Defendant's Response). Ms. Toney, however, recognized Mr. Challenger's company as a job development company. *Id*. I find the fact that Ms. Toney does not know Mr. Challenger to be insignificant in deciding whether Ms. Toney's opinion is based on a reliable methodology.

> 3. Ms. Toney's knowledge of how the United States Department of Labor developed the statistics used in its market studies.

Ms. Toney stated at her deposition that she was not familiar with the methods the United States Department of Labor uses to prepare its Occupational Outlook Handbook. *Id*. at 24-25. Ms. Toney indicated that the United States Department of Labor's methodology is included in the preface of the Occupational Outlook Handbook and attached it to her affidavit. *Id*. at 25; Exhibit E (attached to Defendant's Response). The Plaintiff does not state why Ms. Toney should not rely on the Occupational Outlook Handbook. The fact that Ms. Toney uses what is presumably a nationally recognized and accepted resource book in fields involving vocational matters does not reduce the reliability of Ms. Toney's methodology.

    4. Ms. Toney's reliance on her experience and personal knowledge to conclude that a person with the Plaintiff's education, training and background who makes three weekly employment contacts will be re-employed within 30 to 60 days.

Ms. Toney based her opinion that a person with the Plaintiff's education, training and background who makes three weekly employment contacts will be re-employed within 30 to 60 days on other factors in addition to her experience and personal knowledge. Ms. Toney states in her affidavit that she "based this opinion on [her] analysis of Plaintiff's actual skill set, and on a labor market analysis consisting of the actual trends in Plaintiff's industry and field, actual job openings in the healthcare field, unemployment rates, [her] experience working with thousands of displaced workers, and a number of studies which have been done." Exhibit 1 at ¶10 (attached to Defendant's Response). Although the Plaintiff complains that Ms. Toney failed to rely on any specific studies to formulate her opinion, the combination of Ms. Toney's use of general studies with her analysis of the Plaintiff's skill set, labor market, actual job openings in her field, and unemployment rates, as well as with her extensive experience, is sufficient to lend an indicia of reliability to Ms. Toney's opinion.

    5. Ms. Toney's failure to know where she obtained the statistic that job placement for a person with a disability is 60 to 90 days.

Although Ms. Toney stated at her deposition that she did not know where she obtained the statistic that job placement for a person with a disability is 60 to 90 days, she indicated she thought that the source of that statistic was the Department of Commerce and stated she could find the source. Exhibit 2 at 48 (attached to Defendant's Response). The fact that Ms. Toney is unsure of the source of this statistic is not relevant to her employability analysis. Ms. Toney's expert report did not rely on this particular statistic. Consequently, Ms. Toney's failure to know

where she obtained this statistic on persons with disabilities does not significantly impact on the reliability of Ms. Toney's opinion.

> 6. Ms. Toney's failure to see the Plaintiff's job description prior to her deposition.

The Plaintiff claims that Ms. Toney did not see the Plaintiff's job description until Ms. Toney's deposition.  Apparently, that job description was one for a Project Manager, a position the Plaintiff never held.   The Project Manager job description was, therefore, not critical to Ms. Toney's employability analysis.

> 7. Ms. Toney's failure to speak with any of the employers the Plaintiff contacted about possible job positions to discern the actual competition for those positions.

Although Ms. Toney did not speak with any of the prospective employers which the Plaintiff contacted about employment possibilities, Ms. Toney nonetheless investigated the competition aspect through other means.  Ms. Toney, for example, considered the unemployment rate and the Plaintiff's advanced level of education.  *Id*. at 54.  Consequently, Ms. Toney took into account the competition aspect of employability in her analysis.

> 8. Ms. Toney's professional experience in the field of rehabilitation counseling for persons with disabilities.

Ms. Toney stated at her deposition that much of her practice involves providing rehabilitation counseling to persons with mental or physical disabilities.  *Id*. at 31.  However, Ms. Toney's practice also includes a small percentage of clients like the Plaintiff who do not have a medical condition.  *Id*. at 31, 60-61.  Ms. Toney's professional experience is relevant and applicable to performing an employability analysis of a person like the Plaintiff.

> 9. Ms. Toney's failure to write any published articles regarding re-employment following termination of employment.

Ms. Toney admits that she has not written any published articles regarding re-employment following termination of employment. *Id*. at 32. I find that in the context of Ms. Toney's opinion, the fact that she has not written any published articles regarding re-employment following termination of employment is not critical to the reliability of Ms. Toney's methodology.

> 10. Ms. Toney's failure to know the error rate for the analysis she conducted in this case.

Ms. Toney's failure to know the error rate for the analysis she conducted in this case is not a significant factor in determining the reliability of her methodology when one considers the "soft science" nature of vocational counseling. Ms. Toney states that her opinions are based only on vocational probabilities. *Id*. at 48, 52. The error rate of Ms. Toney's methodology is not particularly relevant to evaluating the reliability of that methodology.

> 11. Ms. Toney's lack of a clear understanding of the Plaintiff's training, background and experience.

Ms. Toney indicated that she believed the Plaintiff was qualified to apply for the following positions: medical director, junior level assistant marketing manager for health and beauty aids, senior director of product marketing for a bioimplant and graft franchise, vice-president for patient services, and regional director of Nation Job Network including director/glaucoma. *Id*. at 64-68. The Plaintiff argues that she is not qualified for these positions. With respect to the medical director position, the Plaintiff contends without any supporting evidence that since she does not have a medical degree she would not be qualified for that position. Ms. Toney stated that it was her understanding that a medical director did not have to possess a medical degree. *Id*. at 65. Without evidence to the contrary, I would accept Ms. Toney's statement that a medical

8

director position does not require a medical degree.  Ms. Toney admitted that although the Plaintiff would be qualified to be a junior level assistant marketing manager for health and beauty aids based on her marketing background, the Plaintiff would be underemployed in that position. *Id*. at 65.  Ms. Toney also noted the Plaintiff could apply her marketing skills to the position of senior director of product marketing for a bioimplant and graft franchise.  With regard to the vice-president of patient services position, Ms. Toney conceded that the Plaintiff would not be qualified for that position because she is not a registered nurse.  The Plaintiff had concerns that the regional director of Nation Job Network position required a nursing background.  Ms. Toney stated that jobs listed in a nursing category like the regional director of Nation Job Network position do not necessarily require a nursing background.  *Id*. at 66.  Finally, Ms. Toney explained that although the hiring authority for the director/glaucoma position desired a license or certification in pharmacy or nursing it also required a bachelor's degree in pharmacy, nursing or business.  *Id*. at 67.  Since the Plaintiff has a master's degree in business and experience in the healthcare industry, Ms. Toney thought the Plaintiff would be better qualified than other applicants for the position of director/glaucoma.  *Id*. at 68.  Ms. Toney implied that it might be difficult to attract applicants who are nurses or pharmacists, and have graduate degrees in business.  *Id*.  Except for the vice-president of patient services position, I find that the Plaintiff could be considered sufficiently qualified to apply for all of these positions.  Accordingly, I conclude that Ms. Toney understands the Plaintiff's training, background, and experience.

      12. Ms. Toney's inability to test her method of analysis.

Ms. Toney's employability analysis is a based on a combination of  "soft science" and specialized knowledge that does not readily lend itself to testing.  The inability to test Ms.

Toney's employability analysis is, therefore, not a great factor in determining the reliability of the methodology.

> 13. Failure of Ms. Toney's peers in the vocational rehabilitation field to use her employability analysis.

Ms. Toney's affidavit clearly demonstrates that her peers in the vocational rehabilitation field use the employability analysis. Exhibit 1 at ¶¶6, 7, 8 (attached to Defendant's Response).

C.  Conclusion

I find that Ms. Toney's specialized knowledge will assist the trier of fact to understand whether the Plaintiff mitigated her damages. I further find that Ms. Toney is qualified as a vocational expert based upon her knowledge, skill, experience, and training to give her opinion regarding the Plaintiff's employability. Finally, I find that Ms. Toney's opinion is based upon sufficient facts; her opinion is the product of reliable principles and methods; and Ms. Toney has applied the principles and methods reliably to the facts of the case. I, therefore, conclude that Ms. Toney's opinion is admissible under Rule 702.

IT IS ORDERED that Plaintiff's Motion in Limine to Exclude the Testimony of Expert Witness Janet Toney (Doc. No. 41) is denied.

_____
CHIEF UNITED STATES DISTRICT JUDGE