IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA CHOINIERE,

    Plaintiff,

vs.                                                 Civ. No. 00-328 JP/RLP

PRESBYTERIAN HEALTHCARE
SERVICES, INC.,

    Defendant.

MEMORANDUM OPINION AND ORDER

On January 12, 2001, the Defendant filed a Motion for Summary Judgment (Doc. No. 50).[1] The Defendant also filed PHS' Motion to Exclude the Testimony of Plaintiff's Economic Expert (Doc. No. 49) on January 5, 2001. After a careful review of the briefs and the relevant law, and following a pre-trial conference on January 29, 2001, during which the parties had the opportunity to present their arguments on the motion for summary judgment, I have determined that Defendant's motion for summary judgment should be granted, except for the Defendant's request for attorney's fees and costs. I have further determined that the motion to exclude the testimony of the Plaintiff's economic expert should be denied as moot.

I. Background

The Defendant employed the Plaintiff as sales director of Secure Horizons, a division of Presbyterian Health Services, Inc. The Plaintiff reported to the Executive Director of Secure

---

[1] The Defendant added to their 12 page reply brief Appendices A, B, and C. The Appendices address the statements of disputed material facts listed by the Plaintiff in her response brief. Since those Appendices are really part of the reply brief, they extend the reply brief past the 12 page limit required by D.N.M. LR-Cv 7.7. Since the Defendant has not asked for a page extension, I will strike those Appendices.

Horizons. On September 3, 1999, the Plaintiff took approved Family Medical Leave Act (FMLA) time off to give birth to her child.  Before beginning her leave, Plaintiff reassigned her duties and responsibilities for coverage by other employees during her absence.  The FMLA leave was scheduled to end November 1, 1999.  While the Plaintiff was on FMLA leave the Defendant appointed Karen Smith as the new Executive Director of Secure Horizons.

On October 29, 1999, the Plaintiff met with Ms. Smith to prepare for her return to work. At this meeting, Ms. Smith told the Plaintiff her position was going to be terminated because of the year 2000 budget reductions.  Apparently, Ms. Smith also told the Plaintiff she did not have to return to work.

Sometime during the beginning of November 1999, the Defendant's Human Resources Department informed the Plaintiff she should return to work.  When the Plaintiff came back to work on November 15, 1999, the Plaintiff was told that her title was Sales Director and she returned to the same office.  The Defendant paid the Plaintiff the same salary, benefits, and commissions she had received before she took FMLA leave. On November 19, 1999, Ms. Smith told the Plaintiff that she should clean out her desk by December 1, 1999 and that she did not need to return to work.  In fact, the Plaintiff did not return to work after November 19, 1999. The Plaintiff's attorney, Mr. Hollington, sent a letter to Ms. Smith on November 29, 1999 advising her that her actions violated the FMLA.  On December 27, 1999, the Plaintiff received formal notice of her job termination effective December 31, 1999.  The Defendant paid the Plaintiff beginning November1, 1999 through December 31, 1999.

The Plaintiff claims that her position was not abolished but rather the Defendant redistributed her duties to project managers and that Secure Horizons hired three project

managers to take on the Plaintiff's duties.  The Plaintiff alleges that these actions demonstrate discrimination based on the Plaintiff taking FMLA leave.  The Plaintiff also claims that her position was not terminated until she complained that the threats to terminate her position were violations of the FMLA. The Plaintiff alleges that this action constitutes unlawful retaliation for taking FMLA leave.  The Plaintiff's alleged damages include lost income, benefits, and commissions as well as liquidated damages.

The Defendant denies that it violated the FMLA.  The Defendant points out that it eliminated the Plaintiff's position along with other positions as part of an overall reduction in administrative costs.  The Defendant states that since it planned to cut back on advertising and marketing, it no longer needed a sales director.  The Defendant asserts that the additional project manager positions were necessary to meet federal regulatory requirements and to process improvements in order to reduce administrative costs.  The Defendant also claims that the Plaintiff failed to mitigate her damages.

II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin*

*Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

III.  Discussion

The Defendant moves for summary judgment on all of the Plaintiff's claims.  Specifically, the Defendant moves for summary judgment on the Plaintiff's FMLA claim for wrongful termination, the FMLA claim for retaliation, and the claim for liquidated damages.  The Defendant also asks for an award of attorney's fees for bringing this motion for summary judgment.

A.  The FMLA Claim for Wrongful Termination

The Defendant argues first that the FMLA claim for wrongful termination must fail because the Plaintiff was reinstated to her position upon return from her FMLA leave.  29 U.S.C. §2614(a) states that upon return from FMLA leave, the employee must be restored to the position of employment held by the employee prior to the FMLA leave, or the employee must be given an equivalent position.  Here, the undisputed facts show that the Defendant paid Plaintiff her usual salary when she came back from FMLA leave, her job title remained the same, and her position did not end until the end of December 1999.  The Plaintiff argues, however, that when she returned from FMLA leave her duties had been given to project managers.  The Plaintiff, therefore, asserts that her job was not the same as before she took FMLA leave.

It appears that although the Defendant paid the Plaintiff the same as before she took leave

and did not change her title, the Plaintiff's position no longer had any substantial duties to perform.  This lack of job duties is demonstrated by Ms. Smith's willingness to allow the Plaintiff to stay home and nonetheless be paid through the end of December 1999.  This situation raises a question of fact as to whether the position to which the Plaintiff returned was her old position or even an equivalent position.  Summary judgment, therefore, cannot rest on the contention that the Plaintiff returned to her old position or an equivalent position.

The Defendant argues, in the alternative, that the Plaintiff's FMLA claim for wrongful termination must fail because the Defendant did not owe the Plaintiff any greater protection than it owed to a person not on leave.  29 C.F.R. §825.216 states:

> (a)  An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.  An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.  For example:
> (1)  If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, ....  An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

The Defendant presents evidence that it eliminated 16.7 positions in 1999 from Secure Horizons.  Plaintiff's position was one of ten Secure Horizons sales and marketing positions eliminated effective December 31, 1999.  According to the Defendant these position eliminations resulted from losses by Secure Horizons of over $18 million in 1999.  Senior management decided in October 1999 to stop actively marketing the Secure Horizons product, cease open enrollment, and close markets.  The Defendant has presented evidence demonstrating that, because of Secure Horizon's financial condition, the elimination of the Plaintiff's position would have occurred even

5

if she had not been on FMLA leave.  The Plaintiff failed to raise a genuine issue of material fact by countering with evidence that her job position would not have been terminated if she had not taken FMLA leave.  For this reason, the Plaintiff's FMLA claim for wrongful termination is subject to summary judgment.

  B.  The FMLA Retaliation Claim

  The Defendant argues that the Plaintiff's retaliation claim must fail for two reasons: 1) the Plaintiff has not presented any evidence of a causal connection between the elimination of her position and her taking FMLA leave; and 2) the Plaintiff has not presented any evidence of pretext.  To show a *prima facie* case of retaliation under the FMLA, the Plaintiff must demonstrate that (1) she availed herself of a protected right under the FMLA;  (2) she was adversely affected by an employment decision;  and (3) there is a causal connection between the two actions.  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1325 (10th Cir. 1997).

> After establishment of a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision.  *Randle*, 69 F.3d at 451.  If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual--i.e., unworthy of belief."  *Id*.  Demonstrating pretext gets plaintiff "over the hurdle of summary judgment."  *Id*. at 452 (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 n. 3 (10th Cir.1994)).
>
>  Pretext can be shown by " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.' " *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951-52 (3d Cir.1996) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994) (further citation omitted)).  "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

*Id*. at 1323.

The Plaintiff alleges that since elimination of her position changed from a mere possibility to a certainty soon after Ms. Smith received Mr. Hollington's November 29, 1999 letter, she satisfies the requirement for a causal connection.  The decision to terminate the Plaintiff's position, however, was made by senior management before Ms. Smith received Mr. Hollington's letter.  In fact, the Plaintiff was told on November 19, 1999 to clean out her desk by December 1, 1999.  The Plaintiff has not presented evidence of a causal connection between the termination of her position and Ms. Smith's receipt of Mr. Hollington's letter.

The Defendant further argues that even if the Plaintiff could make out a *prima facie* case of retaliation she cannot carry her burden of demonstrating pretext.  The Plaintiff contends that the Defendant's financial condition was a pretext for FMLA discrimination and retaliation. She offers several arguments in favor of her position on pretext.  First, the Plaintiff asserts "that had [she] not been on FMLA leave, she would have participated fully in the budget preparation and process, and like other managers who so participated, her job likely would not have been eliminated or if eliminated she would have been hired in an equivalent project manager position like the other participants in the budget process."  Plaintiff's Response to Defendant's Motion for Summary Judgment at 28 (Doc. No. 52), filed Jan. 12, 2001.  Second, the Plaintiff states that the Defendant's Vice-President of Human Resources admitted that an employer violates the FMLA when it eliminates the duties and responsibilities of a person who is on FMLA leave.  Third, the Plaintiff maintains that Ms. Smith intended to eliminate the Plaintiff's position regardless of the Defendant's financial condition and went to great measures to ensure that the Plaintiff would not be hired as a project manager after the Plaintiff complained of FMLA violations.  The Plaintiff

specifically indicates that Ms. Smith's efforts to not rehire the Plaintiff included violations of the Defendant's layoff policies, misrepresentation of the availability of project manager positions, dissuading the Plaintiff from applying for project manager positions by stating to the Plaintiff that she lacked the qualifications for those jobs, and hiring an unqualified person for a project manager position.

Although the Plaintiff would have participated in the budget process if she had not been on FMLA leave, the Plaintiff merely speculates that she would have retained her job or been hired for an equivalent position if she had participated in the budget process. Even if the Defendant had sought the Plaintiff's input on the budget process while the Plaintiff was on FMLA leave, there is undisputed evidence that the Plaintiff did not wish to communicate with the Defendant's employees while on FMLA leave. It is also undisputed that the Plaintiff had distributed her duties and responsibilities to others before she took FMLA leave. There is no conflicting evidence that the Defendant or Ms. Smith redistributed those duties and responsibilities while the Plaintiff was on FMLA leave. The Plaintiff's assertion that Ms. Smith intended to eliminate the Plaintiff's position regardless of the Defendant's financial condition is likewise flawed. Most telling is the undisputed fact that Ms. Smith's first proposed budget presented at an Executive Management Team meeting on October 27, 1999 preserved the Plaintiff's sales director position and did not contain any job eliminations in sales and marketing. Furthermore, the Defendant's management instructed Ms. Smith to eliminate 16.7 FTEs for Secure Horizons; Ms. Smith did not make the decision to eliminate positions.

Ms. Smith admits that she did not follow the Defendant's layoff policy. She explains she was a new employee and was unaware of that policy. Ms. Smith, however, evaluated whether to

fill the new project manager positions internally.[2] In fact, Ms. Smith stated that on October 29, 1999, she advised the Plaintiff to check with Human Resources about other jobs including project manager jobs if that was what she was interested in.  Although it is disputed as to whether the Plaintiff checked with Human Resources about other work opportunities, it is undisputed that Ms. Smith indicated to the Plaintiff that there were no open project manager positions after October 29, 1999 since decisions to fill two of those positions had essentially been made at about that time. Ms. Smith made two project manager job offers in mid-November 1999 and towards the end of November 1999, respectively.   Ms. Smith decided to fill those positions with an outside candidate and an internal candidate. Although the outside candidate subsequently decided not to accept the job before the first of January 2000, Ms. Smith did not inform the Plaintiff of the new opening.  The Plaintiff nevertheless applied for that job sometime after the termination of her job. In addition, there is a question as to whether the internal candidate had the requisite education to qualify for the project manager job.

The facts indicate that Ms. Smith could have been more helpful in securing employment for the Plaintiff.  However, assuming that the Plaintiff is correct in her assertion that Ms. Smith purposely prevented her from obtaining a job as a project manager, a reasonable factfinder could rationally find that the reason for eliminating the Plaintiff's position in the first place was based on financial reasons. The Plaintiff has not shown how Ms. Smith's actions regarding the employment of project managers are proof that the Defendant's proffered legitimate reason for eliminating the Plaintiff's position is a mere pretext.  Hence, a reasonable factfinder could not infer that the

---

[2]The Plaintiff apparently was not eligible for priority placement because she did not choose a transitional leave option, but a decision was made to nonetheless put her in the priority placement category.

Defendant acted for discriminatory reasons. Summary judgment is appropriate on the retaliation claim.

      C. Liquidated Damages

The Defendant further argues that the liquidated damages claim should be dismissed because it acted in good faith when it eliminated the Plaintiff's position and had reasonable grounds for believing that it was not violating the FMLA. *See* 29 U.S.C. §2617(a)(1)(A)(ii) (an employer who violates the FMLA will be liable for liquidated damages unless the FMLA violation was in good faith and the employer had reasonable grounds for believing that the act or omission was not a violation of the FMLA). The Plaintiff argues that the request to dismiss the liquidated damages claim is premature because there must first be a determination as to whether the Defendant violated the FMLA. I agree with the Plaintiff. However, since Defendant's motion for summary judgment will be granted on the grounds already discussed, the issue of liquidated damages is moot.

      D. Attorneys' Fees and Costs

Finally, the Defendant asks for an award of attorney's fees and costs for bringing this motion for summary judgment. I find that the Plaintiff's response to the motion for summary judgment was not unreasonable. Accordingly, I will deny the Defendant's request for attorneys' fees and costs.

      E. The Defendant's Motion to Exclude the Testimony of the Plaintiff's Economic Expert

Granting the motion for summary judgment moots the Defendant's motion to exclude the testimony of the Plaintiff's economic expert. Consequently, that motion will be denied as moot.

IT IS ORDERED that:

1. Defendant's Motion for Summary Judgment (Doc. No. 50) is granted and this action will be dismissed with prejudice;

2. Appendices A, B, and C of the Defendant's summary judgment reply brief are stricken;

3. the Defendant's request for attorneys' fees and costs is denied; and

4. PHS' Motion to Exclude the Testimony of Plaintiff's Economic Expert (Doc. No. 49) is denied as moot.

_____
CHIEF UNITED STATES DISTRICT JUDGE